## Forman v. State Board of Health.

(Decided January 27, 1914.)

'Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1.  Health—State Board of Health—Fourth Clause of Statute Re-
    lating to Not Void for Uncertainty.—The statute providing that
    the State Board of Health may revoke a certificate (1) for the
    practice of frauds in passing examinations; (2) the commission
    of a criminal abortion, or conviction of a felony involving moral
    turpitude; (3) chronic inebriety (4) or other grossly unprofes-
    sional or dishonorable conduct of a character likely to deceive
    or defraud the public, the fourth clause is not void for uncer-
    tainty in failing to erect a standard of conduct, and means when
    read with the preceding clauses that the license may be revoked
    for unprofessional conduct which is dishonorable, fraudulent and
    involves moral turpitude.
2.  Health—Licenses — Revocation — Physicians — State Board of
    Health.—A license may not be revoked because the physician
    practiced in the name of a corporation by which he was em-
    ployed, nor for advertising unless it is dishonorable, fraudulent
    and involving moral turpitude.
3.  Health—Licenses—Revocation by State Board of Health.—A li-
    cense may be revoked by the Board for dishonorable, unprofes-
    sional conduct, which is fraudulent, involving moral turpitude,
    and of a character likely to deceive or defraud the public.
4.  Health—Licenses—Revocation—State   Board   of   Health.—The
    board must act reasonably and upon reasonable grounds; and an
    appeal from their decision lies to the Governor.
5.  Health—Licenses—Proceeding to Revoke Physician's License.—
    The proceeding is not judicial but administrative, and if the
    board acts arbitrarily, and there is no other adequate remedy,
    the courts will intervene to protect private right.

S. A. ANDERSON, JNO. P. HASWELL, JR., for appellant.

'KOHN, BINGHAM, SLOSS & SPINDLE and ARTHUR H. MANN
for appellee.


OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

The State Board of Health on November 30, 1912,
notified Dr. George W. Forman to appear before the
board at a meeting to be held on January 8, 1913, when
the board would determine whether his license to prac-
tice medicine in this State should be revoked. He there-

upon brought this suit to enjoin the board from proceeding in the matter on the ground that the statute under which the board acted was void. On final hearing the circuit court dismissed the petition; the plaintiff appeals.

In Matthews v. Murphy, 23 R., 750, the board was proceeding in a like way against Dr. Murphy under a statute which read:

"The State Board of Health may refuse to issue the certificate provided for in section 2613 of this article to any individual guilty of grossly unprofessional conduct of a character likely to deceive or defraud the public, and it may, after due notice and hearing revoke such certificates for like cause. In all cases of refusal or revocation, the applicant may appeal to the Governor, who may affirm or overrule the decision of the board, and this decision shall be final."

Dr. Murphy brought a suit similar to this. The circuit court granted him the relief sought. Affirming this judgment the court said:

"The appellee having fitted himself for this learned profession, and having been licensed to practice the same, the question arises: Has the State Board of Health the right to charge him with "unprofessional conduct likely to deceive or defraud the public," and erect a standard by which that conduct is to be measured, and if in its judgment he does not meet its requirements, summarily deprive him of a right, or estate or both? The effect of such action of the board would cause the appellee to lose a large sum of money which he has spent for his professional education, and bar him from the acquisition of a livelihood thereby, and at the same time mar his character in such way that it would take years, if he could do so at all, to remove it.

The statute does not prescribe the manner by which a physician may regulate his conduct; it does not advise him in advance what act or acts may be in violation of its provisions; he is not told what is lawful or unlawful. He might do an act which he regarded as entirely proper which neither violated moral law nor involved turpitude, still such acts might, in the opinion of the State Board of Health, amount to unprofessional conduct, and which in its opinion, did or was calculated to deceive or defraud the public. The physician who did the act of which complaint was made before the State Board of Health could not know at the time the act was

done, what standard should be thereafter erected by the board by which its effect was to be determined. As the statute does not advise him before hand as to what is unprofessional conduct, he could not knowingly or intentionally be guilty of it. The legislature in effect has attempted to commit to the State Board of Health the right, after the physician had done some act, to determine what its effect is to be, and if in its judgment he should be deprived of the right to practice his profession, it can inflict the punishment upon him by revoking his license. If the Legislature desires to declare for what acts or conduct a physician's license to practice medicine shall be revoked, it is competent to do so, and to vest in some tribunal the authority to investigate and try the charge which may be made under such a statute. * * *

"What the present Board of Health might consider unprofessional conduct might be adjudged by another board not to be. An act committed during the administration of the present board might be regarded by it as not being unprofessional conduct, yet the board which succeeds it might adjudge it to be, as the statute prescribes no rule which is to govern the conduct of the medical profession or the State Board of Health in adjudging its effect.

"For the reasons given we do not think the act is valid in so far as it attempts to confer upon the State Board of Health the right to revoke a license which has been granted by it to a physician to practice his profession."

After that decision was rendered the act to which it relates was amended so as to read as follows: (Ky. Statutes, section 2615.)

"The State Board of Health may refuse to issue the certificate provided for in this act, for any of the following causes:

"1. The presentation to the board of any license, certificate or diploma which was illegally or fraudulently obtained, or the practice of frauds or deception in passing examination.

"2. The commission of a criminal abortion, or conviction of a felony involving moral turpitude.

"3. Chronic or persistent inebrity or addiction to a drug habit to an extent which disqualifies the applicant to practice with safety to the people.

"4. Or other grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public. The board may suspend or revoke a certificate for any of the causes for which it may refuse to grant a license under the provisions of this act."

The charge which Dr. Forman was cited to answer was that he had been guilty of grossly unprofessional and dishonorable conduct in the practice of medicine of a character likely to deceive and defraud the public and had been guilty of such acts as rendered him morally unfit to practice the profession of medicine in this State, as shown by the complaint made by Dr. Earnest Rau attached to the notice. In this complaint it is stated that during the months of September, October and November, 1912, Dr. Forman aided one X. W. Whittman to conduct an institution in the city of Louisville under the name of the Advanced Medical Science Institute, which name was assumed, and not registered in the county court as required by law; that Dr. Forman under this assumed name practiced medicine for the corporation for hire by the week or month at a salary; that the said institute, Whittman and Forman practiced medicine illegally, deceived and defrauded the public; that Forman on November 22, 1912, pleaded guilty to the charge of doing business under the assumed name of Advanced Medical Science Institute and was fined $50 in the Jefferson Circuit Court; that Forman undertook for hire to aid the Advanced Medical Science Institute to get money from various persons by fraudulent pretenses in pretending that he and it could cure diseases that are incurable, making contracts guaranteeing cures, guaranteeing to cure all diseases, and especially gall stones, without the use of medicine; that he aided in publishing to the world that they possessed an electrical apparatus which cost over $5,000, and was the only one in the United States; that by the use thereof they could cure various diseases, which was untrue and known by him to be untrue at the time; that he aided in advertising to the public that they had cured various persons by the use of the said mechanical device without the use of medicines, and that these advertisements were untrue, deceptive and fraudulent, and that by reason thereof the Advanced Medical Science Institute was enabled to obtain from various persons large sums of money and practiced a fraud upon them; that this conduct was unprofessional and highly dishon-

orable and was likely to deceive and defraud the public and by it Forman had shown that he was not morally a fit person to practice medicine in this State.

It will be observed that there was no attempt to show a violation of clauses 1, 2 and 3 of the statute. The whole of the charge is based on clause 4: ''Other grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public.'' The case therefore turns on the validity of this clause.

It will be observed that in Matthews v. Murphy, the statute was held invalid because it prescribed no standard by which unprofessional conduct was to be measured, and that under that statute, although a physician had done an act which neither violated moral law nor involved moral turpitude, still it might be regarded by the board as unprofessional conduct likely to deceive or defraud the public. In other words, under that statute the board might regard violation of the hypocratic oath as grossly unprofessional conduct likely to deceive or defraud the public; or it might regard as such conduct, the practicing as a physician by some method of which the board did not approve. And one board might erect one standard and a succeeding board a different standard. Is the act now before us subject to the same objection? It will be observed that it prescribes three specific grounds on which a physician's license may be revoked. These are briefly: Fraud in obtaining the certificate, the commission of a criminal abortion or the conviction of a felony involving moral turpitude and chronic inebriety. The fourth clause is to be read in connection with the preceeding three. Some force must be given the word ''other'' and the word ''dishonorable'' which were not in the former statute. Evidently the word ''dishonorable'' was added to qualify the word ''unprofessional,'' the two words meaning ''unprofessional conduct which is dishonorable'' and these words are qualified by the word ''other'' which must mean that the unprofessional dishonorable conduct referred to, is other than that above specified. The well settled rule in the construction of statutes is that where certain things are specified and then a general expression is used, referring to other things, the other things must be of like character with those named. Two of the things above named being fraud in obtaining the certificate and the conviction of a felony involving moral turpitude, the grossly unpro-

fessional and dishonorable conduct referred to in clause 4 must be of like character; that is, the conduct must be fraudulent and must involve moral turpitude; for unless the statute is so construed, proper effect will not be given the word "other," and when it is so construed it erects a definite standard by which the board is to be governed; to which every member of a learned and honorable profession should conform; and he may know in advance that he should conform to this standard. Similar statutes are in force in a number of States applicable to lawyers, dentists and other similar professions as well as physicians. The validity of such statutes has generally been upheld as a valid exercise of the police power to protect the public from fraud and empiricism. (Spurgeon v. Rhodes, 78 N. E., 228; State v. State Board, 34 Minn., 387; State Board v. Roy, 22 R. I., 538; People v. Apfelbaum, 251 Ill., 18; Berry v. State, 135 S. W., 631; State v. Goodier, 195 Mo., 551; Macomber v. State Board, 8 L. R. A., N. S., 585, and note.)

So much of the complaint as showed that Dr. Forman aided Whittman in conducting the Advanced Medical Science Institute and practiced medicine for the corporation for hire in its name shows a commission of a public offense by Dr. Forman, but not an offense involving moral turpitude. While it is unlawful for a physician to practice medicine in any other name than his own, and he may be punished for this, his license may not be for this revoked, as every unlawful act is not ground for the revocation of a license. There is nothing in our statute regulating the advertising which a physician may properly do, and though he may in this violate the physician's Code, it will constitute no ground for revoking his license unless his conduct is dishonorable, fraudulent and involving moral turpitude. Many diseases which a few years ago were regarded incurable are now regarded curable, and many methods of treating diseases which were unknown a few years ago, are now in daily use. New discoveries are constantly being made. The physician who advertises that he can cure a certain disease by a new method may be perfectly sincere in believing that he can do so. On the other hand, the quack and the charlatan who frequently advertise that they can effect cures, when they know the advertisement to be false and thus deceive and defraud the public, are guilty of fraudulent, dishonorable and unprofessional conduct involving

moral turpitude. Whether the physician's acts were sincere or fraudulent and done for the purpose of defrauding the public is a question to be decided by the board on all the facts. The latter part of the charge against Dr. Forman in which it was stated that to defraud the public he had made certain false and fraudulent statements which he knew to be untrue, and had thus enabled the Institute to practice a fraud on various persons, sufficiently shows conduct on his part that was dishonorable, unprofessional, fraudulent and involving moral turpitude, and for the purposes of this case must be taken as true. We do not of course determine that Dr. Forman is guilty. He has not been heard on the merits of the case. What the facts are will be a question for the board to determine. The board must act reasonably and upon reasonable grounds; and if they err an appeal lies to the Governor of the State. The intent with which the acts were done is the gist of the matter. If the doctor was sincere in what he did and said or there was no moral turpitude, his license may not be revoked; but if he had not such reason for his conduct as a man of ordinary prudence would usually act upon under like circumstances, it may be inferred from this that he was not sincere and that his conduct involved moral turpitude. This is a question to be determined on all the facts shown in the evidence.

The proceeding is not judicial; it is purely administrative. The State may create a board to grant licenses to physicians and may authorize the same board to revoke a license they have granted. Arbitrary power cannot be conferred on the board; it may not act arbitrarily but must act upon reasonable grounds and in compliance with the statute. If the board acts arbitrarily and there is no other adequate remedy, the courts will intervene to protect private right. (Webster v. State Board of Health, 130 Ky., 191; Meffert v. State Board, 195 U. S., 625; Kennedy v. State Board, 145 Mich., 125, 9 Am. & Eng. Ann. Cas., 125; State v. Webster, 150 Ind., 607; State v. Shaefer, 129 Wis., 459.)

We, therefore, conclude that the circuit court properly refused the injunction, and properly dismissed the plaintiff's petition on the facts shown.

Judgment affirmed.