Neill et al., Appellants, *v.* Gimbel Brothers, Inc.

214

Argued January 11, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert T. McCracken,* with him *Nochem S. Winnet* and *George G. Chandler,* for appellants.

*Joseph B. Winokur,* of *Loewenstein & Winokur,* with him *Evans, Bayard & Frick, Brown & Williams* and *Sundheim, Folz & Sundheim,* for appellee.

*Carlos Berguido, Jr.,* and *Robert Rosenberg,* filed a brief on behalf of Retail Opticians of America, amici curiæ.

OPINION BY MR. JUSTICE SCHAFFER, March 21, 1938:

Plaintiffs, individually, as licensed optometrists, and as trustees of The Philadelphia County Optometric Society, and Pennsylvania Optometric Association, brought this bill in equity against Gimbel Brothers, Inc., a New York corporation, which conducts a department store in the City of Philadelphia, to enjoin it from the practice of optometry, directly and indirectly. The chancellor entered a decree, "That the defendant be enjoined from holding itself out as an optometrist, by advertisement, sign or otherwise, and from practicing optometry."

Plaintiffs, not being satisfied with the decree as entered, prosecute this appeal, urging that the decree shall be enlarged so as to specifically prohibit defendant from employing licensed optometrists to examine the eyes of its customers. The chancellor, whose findings and discussion are a model in equity practice, declined to go along with plaintiffs in this regard and found as a conclusion of law that "The statute [Act of March 30, 1917, P. L. 21, 63 PS Secs. 231-244 as amended] does not make it unlawful for a licensed and duly registered optometrist to contract with an individual, firm or corporation to examine the eyes of such patrons as may request it" and further that "The Act regulating the practice of optometry in Pennsylvania does not make it unlawful for an individual, firm or corporation to advertise to the public that they may procure such services as they may require from a duly licensed and registered optometrist with whom such individual, firm or corporation has contracted."

The facts are not in dispute and those necessary to have in mind in disposing of the controversy are these: The course of study provided in most schools of optom-

etry is from three to four years.[1]  The professional
charges of optometrists are for examining the eyes, for
prescribing glasses and for examining and fitting glasses
after they are made.  Prescriptions for glasses formu-
lated by optometrists are filled by the patient's own
optician or by an optician chosen by the optometrists.

Defendant leases a portion of its department store to
the partnership of J. Diamond, which operates therein
an optical department for the examination of eyes and
the fitting and supplying of glasses.  This leased por-
tion of the store is known and operated as the "Optical
Goods Department."  The lease is of indefinite duration
and may be cancelled on thirty days' notice.  The rental
is $12,500 per year, plus one-third of the lessee's gross
annual business in excess of $50,000.  The lease pro-
vides that the name of "Gimbels" shall alone be used in
advertising and binds the lessees to expend a certain
percentage of their annual sales (at least $3,000) for
advertising under the name and direction of defendant.
The store sign outside the leased department reads
"Gimbel Brothers' Optical Department."  The names of
the lessees do not appear in the shop or in the advertise-
ments.

Prior to the commencement of this proceeding adver-
tisements appeared under the name "Gimbels Modern

---

[1] The subjects studied are physics, chemistry, biology, bacteriol-
ogy, mathematics, history of optometry, anatomy (including his-
tology and embryology), physiology (including physiological op-
tics), ophthalmic mechanics ( (a) physical principles of lenses, (b)
principles of lense making), optometry, geometrical optics, chem-
istry (physiological), pathology (general), pharmacology, ocular
pathology, ophthalmic mechanics (clinical application of lenses),
optometry (including physiological optics), clinical optometry,
psychology (experimental and visual), surgery (lectures and dem-
onstrations), office practice, clinical ocular pathology (treatment
of diseases), ophthalmic mechanics (advanced methods in clinical
application), clinical optometry and conferences, visual fields,
orthoptics, subnormal vision, surgery, ocular (clinical and hospital
demonstrations).

Optical Shop" with no mention of the registered optometrists in attendance. Thereafter the advertisements named Dr. Saylor as the optometrist actually in charge of the department. The registered optometrist in attendance and all other employees of the department are employed by the lessees. They are hired and paid by the lessees, but are under the supervision and control of defendant. It may dismiss them. The registered optometrists do not conduct a practice of their own and are required to charge for all examinations and fittings of glasses in defendant's name. It receives all fees. The charge for services rendered are fixed by the lessees but must be as low as in any other department store in the city, so as to successfully compete. Bills rendered for the examination of eyes and their fitting with glasses are in defendant's name and on its billheads. Defendant does not hold a certificate of licensure to practice optometry and, as a New York corporation, does not have the right to practice.

Under the foregoing findings, can it be said defendant is practicing optometry without the necessary certificate of licensure? Appellants urge upon us that it is. They do not contend that defendant does not have the power to lease space in its store for whatever purpose the lessee may desire, and concede that it may lease space to a doctor, or to a lawyer, to carry on their professional callings, but submit that, when the leasing is accompanied with such control as is here shown, the lessee becomes the agent of defendant, and, as it is forbidden to practice, it may not do so through agents.

We think the chancellor, who found as a conclusion of law that optometry is a profession, took a somewhat restricted view of what optometry is when he said: "the practice of optometry . . . is essentially a mechanical process which requires a knowledge of the use and operation of certain instruments and appliances designed to measure and record the errors in human vision." The optometry statute (Sec. 5, 63 PS Sec. 233, as amended)

requires that every one fitting himself to practice shall take an examination "in practical, theoretical, and physiological optics, in theoretical and practical optometry, and in the anatomy and physiology of the eye, and in pathology as applied to optometry." To enable the user of the mechanical processes to intelligently, understandingly and scientifically apply them, he must have the background of scientific and technical knowledge and training which is required. His operation of his instruments is no mere rule of thumb. What was said by the Supreme Court of Michigan in *Seifert v. Buhl Optical Co.,* 276 Mich. 692, 268 N. W. 784, decided September 2, 1936, more adequately portrays what the present day optometrist is: "The difficulty with appellant's entire position is its belief that optometry is merely an incident to its corporate merchandising business. It overlooks the fact that optometry has become a real science devoted to the measurement, accommodation, and refractory powers of the eye without the use of drugs, thus superseding obsolete and archaic methods of fitting eyeglasses. It has become one of the important professions, and for the preparation of its proper practice courses in optometry, physics, physiology, pathological conditions of the eye, the proper use of the retinascope, ophthalmometer, opthalmoscope, refractor, prisms, lenses, etc., are given as part of the curriculum in many of our largest universities as well as colleges specializing in optometry. The legislatures throughout the entire country have recognized that the proper practice of this profession is of the most vital importance to the public, and have made due provisions, not only for the licensing of optometrists after proper examination, but for regulating the proper practice of the profession."

The Supreme Judicial Court of Massachusetts in the very recent case of *McMurdo v. Getter,* Mass. Adv. Sh. (1937) 1355, 10 N. E. (2) 139, decided September 20, 1937, took a view of the situation before us which is in consonance with our own. It is there said: "The de-

fendants contend that they are not practising optometry illegally, although they are not registered optometrists and yet reap all the financial reward of a practise conducted by their servant who is a physician and as such entitled to practice optometry without registration. . . . A different rule has been applied to the learned professions. These are characterized by the need of unusual learning, the existence of confidential relations, the adherence to a standard of ethics higher than that of the market place, and in a profession like that of medicine by intimate and delicate personal ministration. Traditionally, the learned professions were theology, law and medicine; but some other occupations have climbed, and still others may climb, to the professional plane. . . . Dentistry, a branch of medicine, has done so within modern times. Professional men may be held to a higher ethical code, for example by the restriction of advertising, than men engaged in ordinary business. . . . The rule is generally recognized that a licensed practitioner of a profession may not lawfully practise his profession among the public as the servant of an unlicensed person or a corporation; and that, if he does so, the unlicensed person or corporation employing him is guilty of practising that profession without a license. A corporation as such cannot possess the personal qualities required of a practitioner of a profession. Its servants, though professionally trained and duly licensed to practise, owe their primary allegiance and obedience to their employer rather than to the clients or patients of their employer. The rule stated recognizes the necessity of immediate and unbroken relationship between a professional man and those who engage his services. It was applied recently in this Commonwealth in the case of lawyers. The judicial branch of government to which is entrusted the regulation of practise by attorneys at law, has never relaxed the rule. . . . In the absence of statutory modification in favor of hospitals or others . . . the same rule applies to physicians and dentists.

. . . The position of a physician normally is not that of a servant of anyone. . . . As to optometrists, there seems to be a conflict of authority. Undoubtedly the fitting and sale of eyeglasses began as a trade and not as a profession. There is some support in decided cases for the proposition that it must remain a trade, in which an unlicensed person or a corporation may engage as of right, provided the actual work is done by a skilled servant duly licensed: *Dvorine v. Castelberg Jewelry Corp.,* 170 Md. 661, 185 Am. Rep. 562; *Jaeckle v. L. Bamberger & Co.,* 119 N. J. Eq. 126, 181 A. 181, affirmed 120 N. J. Eq. 201, 184 A. 520; *State ex inf. McKittrick v. Gate City Optical Co.,* 339 Mo. 427, 97 S. W. (2d) 89; *Georgia State Board of Examiners in Optometry v. Friedmans' Jewelers, Inc.,* 183 Ga. 669, 189 S. E. 238. See, also, *Sage–Allen Co., Inc., v. Wheeler,* 119 Conn. 667, 179 A. 195, 98 A. L. R. 897.[2] The considerations to the contrary seem to us more weighty. In recent times abnormalities of the eye, like those of the teeth, have been found sometimes to indicate and often to result in serious impairment of the general health. The work of an optometrist approaches, though it may not quite reach, ophthalmology. The learning and the ethical standards required for that work, and the trust and confidence reposed in optometrists by those who employ them, cannot be dismissed as negligible or as not transcending the requirements of an ordinary trade. We cannot pronounce arbitrary or irrational the placing of optometry on a professional basis. This conclusion finds support in other jurisdictions. *State ex rel. Beck v. Goldman Jewelry Co.,* 142 Kan. 881, 51 P. (2d) 995, 102 A. L. R. 334, and note; *State v. Kindy Optical Co.,* 216 Iowa 1157, 248 N. W. 332; *Eisensmith v. Buhl Optical Co.,* 115 W. Va. 776, 178 S. E. 695; *Funk Jewelry Co. v. State ex rel. La Prade,* 46 Ariz. 348, 50 P. (2d)

---

2 To which may be added *State v. Gus Blass Co.,* 193 Ark. 1159, 105 S. W. (2) 853, decided May 10, 1937.

945; *Bennett v. Indiana State Board of Registration
and Examination in Optometry* (Ind. Sup.), 7 N. E.
(2d) 977; *State ex rel. Harris v. Myers,* 128 Ohio St.
366, 191 N. E. 99; *State ex rel. Bricker v. Buhl Optical
Co.,* 131 Ohio St. 217, 2 N. E. (2d) 601; *Rowe v. Stand-
ard Drug Co.,* 132 Ohio St. 629, 9 N. E. (2d) 609. Al-
though the statute does not show an uncompromising
determination to apply purely professional standards
to optometrists, we think that they are in effect placed
on a professional plane. . . . We think that upon the
agreed facts the defendants are practising optometry
without right." The court enjoined the defendant from
practicing optometry, either personally or by an em-
ployee.

We conclude the decree should be modified so as to
provide that the defendant be prohibited from the prac-
tice of optometry, directly or indirectly, and from em-
ploying registered optometrists to examine the eyes of
its customers. The court below will modify its decree
accordingly.

The argument of appellee that the decree as we are
directing it to be modified will make the act unconstitu-
tional as contravening the 14th amendment to the Fed-
eral Constitution under the authority of *Liggett Co. v.
Baldridge,* 278 U. S. 105, in our opinion is without merit.
That case does not support the proposition that a li-
censed practitioner of a *profession* may be employed at
a salary to render professional services to the customers
of a person, partnership or corporation, where the con-
tractual relationship of the client or customer is, not
with the practitioner, but with the latter's employer,
and the chancellor decided as before noted that optom-
etry is a profession. If a corporation hired a lawyer to
render legal services under such arrangements, it would
clearly be engaged in the practice of law. The legisla-
ture has the right to forbid such practice as contrary to
public policy, which is properly concerned with the
maintenance of high professional standards. One who

practices a profession is apt to have less regard for professional ethics and to be less amenable to regulations for their enforcement when he has no contractual obligations to the client, does not fix or receive the fees, and is under the control of an employer whose commercial interest is in the volume of sales of merchandise effected by the prescriptions of the employee-practitioner. These features were entirely absent from the *Liggett* case.

Decree directed to be modified. Costs to be paid by defendant.

Mr. Justice DREW dissents.