## Kendall et al. v. Beiling.

Oct. 1, 1943.

784

Lee Hamilton, and Hubert Meredith, Attorney General, for appellant.

Charles W. Morris and Morris, Garlove & Goldsmith for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The State Board of Health revoked the license of Harry G. Beiling to practice optometry upon the ground that he had aided and abetted a person not holding such a license to practice that profession. Sections 2615, 2618a-6, 2618a-9, now KRS 311.210. The Governor affirmed the decision and action of the Board. Section 2615, Kentucky Statutes, now KRS 311.120, 311.210. The circuit court, however, found there was no evidence to support the conclusion. The order of revocation was vacated and the Board of Health, its members and successors, were enjoined from cancelling the respondent's license. The appeal is from that judgment.

The facts are not in dispute. Beiling was employed by the Kay Jewelry Company, a corporation, whose charter does not, as it could not, authorize it to practice optometry. He has been paid a specified salary and bonus. He had the exclusive control of this department of the company's business and his professional judgments and acts were not interfered with. He made examinations and tests of patients and prescribed lenses as needed, which were manufactured by another company for the Kay Jewelry Company. Beiling fitted the glasses which were sold for the company. All fees and charges, whether any merchandise was sold or not, have been paid directly to the company which keeps the records and accounts. It advertises this department of business as "Our modern Optical Department," sometimes naming its employed optometrist and sometimes not. It gives a credit of $1 to each patient or customer who brings in $10 of additional business to this department. Its charges include fees for Dr. Beiling's professional services. This practice and the relationship is regarded by the State Board of Health as within the statute, now KRS 311.210 (c), authorizing the revocation of a license for aiding or abetting an unlicensed person to practice optometry.

The authority of the court as well as the propriety of the procedure is questioned. When the Board of Health had notified Beiling to appear for a hearing of

the charges that he had violated this provision of the Statutes, he filed a petition praying for a declaration of rights in the premises and appropriate injunctive protection. The court overruled special and general demurrers to the petition and the Board of Health filed an answer. The special demurrer challenged the jurisdiction of the court upon the ground that the Statutes place the power to determine such cases in the Board of Health initially and the Governor on appeal. The answer denied allegations of a prevailing custom, recognized by the Board as being legitimate, and traversed certain charges and legal conclusions. It averred that the defendant had received his license as an optometrist after the effective date of the statute invoked, namely, in 1938; described his relationship to his employer, and alleged the intention and legal interpretation of the statute in respect thereof. The Board of Examiners in Optometry followed the answer of the Board of Health and by a cross petition called upon that body to enforce the optometry law.

After the court had heard evidence, he ruled that the case was not a proper one for a declaratory judgment, since the plaintiff was seeking to have the court lay down ''a code of conduct.'' The court recognized that the statute contemplates hearing and decision by the Board of Health and appeal to the Governor; also that the right to resort to the courts by any aggrieved party thereafter is inherent in the law, although the statute is silent in respect thereof. Being reluctant to interfere prior to completion of the administrative action, the court referred the record to the Board of Health for determination of the facts and decision. A temporary injunction issued. restraining any final act of revocation of the plaintiff's license pending a disposition of the case. Jurisdiction was reserved for further consideration if the plaintiff should be dissatisfied with the decision of the Board and of the Governor.

Dr. Beiling appeared with counsel before the Board, and though it was agreed that other testimony could be offered, only the record made in the court was presented. Upon that record the Board ordered the license revoked. When the Governor had affirmed the decision he sent the record to the circuit court. The court again considered the case after a hearing and rendered the judgment stated.

The appellants argue that the court was without ju-

risdiction, first, because the legislature has conferred the exclusive power to revoke licenses of medical practitioners, including optometrists, upon the State Board of Health, and confined the right of appeal to the Governor; and, secondly, no appellate jurisdiction could be acquired by bringing the case before the court by a writ of certiorari.

It is settled that it was proper for the legislature to commit to the State Board of Health the authority to investigate and try a licensee coming under its authority and, acting justly, reasonably and fairly, to revoke his license under a statute sufficiently definitive in its regulation. Forman v. State Board of Health, 157 Ky. 123, 162 S. W. 796.

Although there has been a phenomenal expansion of regulatory law administered through boards and bureaus in the past 35 or 40 years, it is not a new branch of jurisprudence, and from time immemorial courts have been reviewing administrative decisions, principally as to tax assessments. Constitutional courts are not subservient to statutory boards of administration. Bloemer v. Turner, 281 Ky. 832, 137 S. W. (2d) 387. The right to resort to the courts is implicit in the terms of Section 14 of the Constitution of Kentucky, declaring that all courts shall be open and every person shall have a remedy by due course of law for any injury to his person or property or reputation. It is the inherent power of the courts to scrutinize the acts of such administrative tribunals wherein the person or property rights of an individual have been adjudicated, and no special provision of a statute is necessary to confer authority already possessed by them under the Constitution. However, it is generally recognized that the legislative branch of the government may vest considerable discretion in administrative boards and declare to what extent their findings of fact shall be accepted, and, in a limited degree, may prescribe the terms upon which recourse to the courts may be had. Commonwealth v. Frost, 295 Ky. 137, 172 S. W. (2d) 905. But where no question of fact is at issue and only questions of law are involved, the arm of the court may not be shortened, except perhaps in a matter of limitations of time in which to bring the case to the court. Dougherty v. Kentucky Alcoholic Bev. Control Board, 279 Ky. 262, 130 S. W. (2d) 756. It is a question of law whether a board has acted arbitrarily or capri-

ciously, such as without having competent evidence to support its finding or decision. In such a case, as it is in all questions of law, the courts will intervene and exercise the judicial power without restriction to protect private rights. Matthews v. Murphy, 63 S. W. 785, 23 Ky. Law Rep. 750, 54 L. R. A. 415; Webster v. State Board of Health, 130 Ky. 191, 113 S. W. 415; Forman v. State Board of Health, supra; Kentucky State Board of Dental Examiners v. Crowell, 220 Ky. 1, 294 S. W. 818. Certainly, where the facts are undisputed, it is peculiarly a judicial matter to interpret and apply the law in relation thereto.

Most of our statutes empowering various administrative boards and officers to exercise quasi judicial power make special provision for an appeal or review by the courts at the instance of an aggrieved party. For example, a dentist dissatisfied with the action of the State Board of Dental Examiners in relation to his license may appeal to a court within thirty days. KRS 313.340. But the Statutes relating to the licensing or suspension or revocation of licenses of optometrists and of physicians and surgeons is silent in this respect. There is, therefore, no curb of any kind placed upon the power of the courts to adjudge the rights of the parties after final action by the Board and Governor, although due regard for the spirit and purpose of the statute in lodging the primary power in a competent board of the medical profession, with which the practice of optometry has been classed, will be observed, and their decision upon questions of fact will be given very high consideration.

As to procedure. Since the allegations of the petition seem to have been sufficient in relation to the charges of unlawful discrimination and threats by the State Board of Health, with resulting irreparable injury to the plaintiff, we think the court properly overruled the special and general demurrers. But the evidence submitted to the court did not sustain those particular charges. It did disclose a condition within the power of the Board to investigate and dispose of. Out of regard for that statutory power we think the court at that stage of the proceeding properly refused to interfere. Courts will not render a decree in advance where there is no more than an apprehension that a Board will perform its duty wrongfully. 42 Am. Jur., Public Administrative Law, Section 195, 197. The law respecting the adequacy and

exclusiveness of remedies in administrative tribunals as related to injunctions to prevent a wrong is thus stated in the Restatement of the Law of Torts, Section 948 b: "If the statutes relating to the administrative tribunal validly and in specific terms give it exclusive primary jurisdiction over the controversy involved in the injunction action, they may thereby deprive the courts of power to award injunction or any other remedy until the tribunal has passed upon the matter, and then only by way of ancillary enforcement of the tribunal's order. The same result may follow if upon a fair construction of the statutes, it appears that the legislative policy would be defeated by judicial interference in the province of the tribunal." See Kentucky Unemployment Compensation Commission v. Chenault & Orear, 295 Ky. 562, 174 S. W. (2d) 767. Instead of dismissing the petition, the court merely suspended action until the Board and the Governor on appeal had decided the case. Of course, if they had decided it in favor of the respondent, that would have ended it. When their decision was adverse, the plaintiff returned to the court as a House of Refuge and claimed protection.

Reference is made in the trial court's opinion to bringing or returning the record upon a writ of certiorari, and the appellant argues that the Code does not permit a court to obtain or keep appellate jurisdiction over an administrative tribunal by such writ. Ordinarily that method is not recognized here for this purpose although it is in other jurisdictions. See State Board of Dental Examiners v. Savelle, 90 Colo. 177, 8 P. (2d) 693, 82 A. L. R. 1176. It appears that in its common law form an important function of the ancient writ of certiorari was to bring to the courts for review the decisions of administrative boards or officers acting in a quasi judicial capacity and included a sufficient examination of the evidence for the court to determine whether they had exceeded their powers by acting without any evidence to support their orders. Note, 40 Am. St. Rep. 29. But we do not regard the method followed by the circuit court as being the use of that writ. The record does not show that such process was issued. The court merely picked up the case after the plaintiff had exhausted his special statutory remedy and determined it on the record which had been made, in effect, before the State Board of Health and the Governor on appeal. This avoided the

institution of a new suit, which certainly would have been authorized had the court dismissed the petition first filed. Although not a perfectly technical procedure, we think it was a practical and reasonable method and no prejudice or harm was done either party.

Kentucky Revised Statutes 311.210 grants power to the State Board of Health to revoke any optometrist's license upon several grounds, one of which is: "Employing, procuring or inducing any person not holding a license to practice optometry or any branch of medicine aiding or abetting such person to practice optometry or any branch of medicine." Pertinently, this obviously involves two factors: One is whether the Kay Jewelry Company was engaged in the practice of optometry within the meaning of the law, and the other whether the licensed employee, Dr. Beiling, aided and abetted it in doing so. The chancellor expressed the view that the purpose of the statute to protect the public from unskilled persons examining and prescribing for the eyes is met when the person so practicing has been licensed, and that as the corporation acted only through its agent, Beiling, and did nothing which may be deemed to be the practice of optometry other than what he did, it is not logical to say that it practiced optometry; nor to hold that when Beiling acting individually collaborated with himself acting as its agent, he aided and abetted the company in the practice.

While a corporation is considered a person for many purposes, see KRS 446.010 (21), it is recognized that one cannot be licensed to practice a learned profession, which can only be done by an individual who has received a license to do so after proving his qualification and knowledge of the subject. Thus, there is scarcely any judicial dissent from the proposition that a corporation cannot lawfully engage in the practice of law or of medicine. 13 Am. Jur., Corporations, Section 837; 5 Am. Jur., Attorneys-at-Law, Section 25; 41 Am. Jur., Physicians and Surgeons, Section 20. See Johnson v. Stumbo, 277 Ky. 301, 126 S. W. (2d) 165. And the great weight of authority is that "neither a corporation nor any other unlicensed person or entity may engage, through licensed employees, in the practice of medicine or surgery, dentistry, or any of the limited healing arts." 41 Am. Jur., Physicians and Surgeons, Section 20. It seems that the less the personal equation enters into the particular practice, or the farther the service of the practitioner is

removed from a personal relationship of trust and confidence and from the exercise of individual ability and talent, the more liberal becomes the judicial view as to the power of a corporation, or other entity not capable of being licensed itself, to carry on the profession or business through licensed individual employees. In the matter of the practice of optometry, the courts of the several jurisdictions are divided. Notes 141 A. L. R. 888. It will be found that most of the cases which hold in effect that an employer does not practice optometry through an employed licensed optometrist are distinguishable from those which hold to the contrary by differences in the terms of the statutes involved, which differences may relate to specific or implicit provisions, and in the peculiar facts. 41 Am. Jur., Physicians and Surgeons, Section 28. Thus, in Sage-Allen Co. v. Wheeler, 119 Conn. 667, 179 A. 195, 98 A. L. R. 897, the statute expressly declared that it did not prohibit the operation by a department store of an optical department under the supervision of a licensed optometrist. And in Silver v. Lansburgh & Brother, 72 App. D. C. 77, 111 F. (2d) 518, 128 A. L. R. 582, the court, though apparently influenced by general conceptions, construed an act of Congress, applicable only to the District of Columbia, as regarding optometry as a mechanical art requiring skill and knowledge in the use of certain instruments and appliances but not a learned profession, such as the practice of medicine or law, involving the traditional relationship between physician and patient and attorney and client. In some of the cases the character of the relationship between the corporation and the practitioner was controlling. Thus, it is held that where only the relation of landlord and tenant exists, as where a licensed optometrist has his office in a store and the proprietor advertises that such a practitioner is available to its customers, it is legitimate. Rowe v. Burts, Inc., Ohio App., 31 N. E. (2d) 725. But it may be unlawful with additional or different conditions. State v. Goldman Jewelry Co., 142 Kan. 881, 51 P. (2d) 995, 102 A. L. R. 334; Neill v. Gimbel Bros., 330 Pa. 213, 199 A. 178; annotations 102 A. L. R. 343; 128 A. L. R. 883; 141 A. L. R. 888.

The late Doctor A. T. McCormack, who served Kentucky for so many years as Secretary of the State Board of Health, and whose eminence in matters of public health is well-known among the profession throughout the country, testified in this case to the gradual evolution

and development of optometry and to its progressive rise as a profession in the art of healing. Along with that progress, as he described, came legislative regulation, sponsored by the state association of optometrists, culminating in the Act of 1938, 1st Ex. Sess. c. 11, which has been carried into the Revised Statutes as a part of the chapter dealing with the practice of medicine. A section of that statute, 311.010, after defining the practice of medicine and expressly excluding from its meaning certain practices and related services (but not optometry), declares in Subsection (3):

"(a) 'Practice of optometry' means the examination of the human eye without the use of drugs, medicines or surgery to ascertain the presence of defects or abnormal conditions that can be corrected by the use of lenses, prisms or ocular exercises and their adaptation for the aid thereof and the correction or attempt to correct defects of the eye by any means, except upon the prescription of a physician.

"(b) Opening an office, or announcing to the public a readiness to do any of the acts mentioned in this subsection constitutes practicing optometry.

"(c) The practice of optometry does not include the sale of spectacles, eyeglasses or lenses only as merchandise in a duly established mercantile establishment."

To obtain a license as an optometrist one is required to pass an examination before the State Board of Health, like in kind but not to the extent of that required of doctors of medicine, the subjects in which the applicant for a license in this particular branch of the healing art (as the statute classifies optometry) has been trained being limited to special parts of the body. Our statutes, therefore, place the practice of optometry upon a rather high professional plane. It is of interest to observe that after the Supreme Court of Arkansas had ruled optometry not to be a learned profession, the legislature of the state expressly declared it to be and enacted regulatory statutes based upon that declaration, a provision of which prohibits advertising and authorizes the revocation of the license of an optometrist who accepts employment from a person or corporation not licensed to assist such employer in practicing optometry, which acts were held valid and constitutional. Melton v. Carter, 204 Ark. 595, 164 S. W. (2d) 453.

In McMurdo v. Getter, 298 Mass. 363, 10 N. E. (2d)

139 (set out in annotation in 128 A. L. R. at page 586), the court restrained the defendant from practicing optometry where it employed a registered physician, at a weekly salary at its place of business, to issue prescriptions for eyeglasses which the defendant filled. The court declared: "The physician was the servant of the defendant, notwithstanding the fact that the defendant actually exercised no control over the mode, manner, or result of his eye examinations. The court said: 'In recent time, abnormalities of the eye, like those of the teeth, have been found sometimes to indicate, and often to result in, serious impairment of the general health. The work of an optometrist approaches, though it may not quite reach, ophthalmology. The learning and the ethical standards required for that work, and the trust and confidence reposed in optometrists by those who employ them, cannot be dismissed as negligible or as not transcending the requirements of an ordinary trade. We cannot pronounce arbitrary or irrational the placing of optometry on a professional basis. * * * Although the statute does not show an uncompromising determination to apply purely professional standards to optometrists, we think that they are in effect placed on a professional plane.' "

The Supreme Court of Florida, following the Massachusetts court, points out that in the situation the responsibility of the employee in the performance of services is so important to those whose eyes are abnormal that it ought not to be confused with his loyalty to the unskilled employer who is accountable to the patients to whom he is not personally permitted to minister; so the result is a broken relationship "between a professional man and those who engage his services." State Board of Optometry v. Gilmore, 147 Fla. 776, 3 So. (2d) 708, 709.

Other reasons for the same conclusion are given in several of the following cases: Kay Jewelry Co. v. Board of Registration, 152 Mass. 581, 27 N. E. (2d) 1; State v. Goldman Jewelry Co., 142 Kan. 881, 51 P. (2d) 995, 102 A. L. R. 334; State v. Kindy Optical Co., 216 Iowa 1157, 248 N. W. 332; Eisensmith v. Buhl Optical Co., 115 W. Va. 776, 178 S. E. 695; Stern v. Flynn, 154 Misc. 609, 278 N. Y. S. 598; Funk Jewelry Co. v. State, 46 Ariz. 348, 50 P. (2d) 945; Neill v. Gimbel Bros., 330 Pa. 213, 199 A. 178; Rowe v. Standard Drug Co., 132 Ohio St. 629, 9 N. E. (2d) 609; Ezell v. Ritholz, 188 S. C. 39, 198 S. E.

419; State ex rel. Bricker v. Buhl Optical Co., 131 Ohio St. 217, 2 N. E. (2d) 601.

In the case at bar it was proved, as we have described, that the corporation did more than sell eyeglasses and lenses as merchandise. Other than the condition and acts related, its activities came within the specific terms of Subsection 3(b) of the statute, KRS 311.010, declaring that the opening of an office and announcing a readiness to render the services of an optometrist constitutes practicing optometry. We are of the opinion, therefore, that the corporation was engaged in the practice of optometry within the meaning of the statute.

We cannot accept the premise of the argument or agree with the reasoning of the learned chancellor that the corporation did nothing which can be regarded as practicing optometry other than what its employee did or that he was only acting as an individual in collaboration with himself as an agent. Surely the doctrine of respondeat superior would have applied had he committed a tort in and during the course of his employment. Optometry was one of the corporation's departments of business and Beiling was its agent. His services are clearly within the meaning of aiding and abetting it in carrying on that business of which his professional services were only a necessary part. Nearly if not all of the cases above cited were proceedings directed against a corporation or an employer to enjoin it from practicing the profession.

The essential element of aiding and abetting the commission of any act is assisting and taking an active part in it. Certainly, Dr. Beiling did that in the unlawful practice by his employer. Dentists are deemed to be within the terms of a statute authorizing suspension or revocation of their licenses for unprofessional conduct by accepting employment and practicing under the direction of corporations. Homan v. Board of Dental Examiners, 202 Cal. 593, 262 P. 324; State Board of Dental Examiners v. Savelle, 90 Colo. 177, 8 P. (2d) 693, 82 A. L. R. 1176; State Board of Dental Examiners v. Miller, 90 Colo. 193, 8 P. (2d) 699; Painless Parker v. Board of Dental Examiners, 216 Cal. 285, 14 P. (2d) 67; Annotations 54 A. L. R. 1516, 82 A. L. R. 1187; 48 C. J. 1099. The same is, of course, true of optometrists and other practitioners of similar professional rank.

We are of opinion, therefore, that the circuit court should have refused to set aside the action of the State Board of Health. We are constrained to observe, perhaps gratuitously, that the permanent revocation of this young man's license seems to be severe under the circumstances, where the evil sought to be struck was apparently the unlawful practice by the corporation, which might have been done by a direct proceeding. But the legislature vested such discretion and power in the State Board of Health and the court has no right to modify that decision, that also being within the province of the Board.

Judgment reversed.