**William A. KELLY, Appellant,**

v.

**BOARD OF EDUCATION OF MONTICELLO INDEPENDENT SCHOOL DISTRICT, Appellee.**

Court of Appeals of Kentucky.

Nov. 4, 1977.

Rehearing Denied Feb. 10, 1978.

Discretionary Review Denied June 6, 1978.

Arthur L. Brooks, Brooks & Sullivan, Lexington, for appellant.

R. B. Bertram, David C. Hull, Bertram & Bertram, Monticello, for appellee.

Before HOGGE, HAYES and LESTER, JJ.

HOGGE, Judge.

This is an appeal from a judgment of the Wayne Circuit Court upholding the action of the Board of Education of Monticello Independent School District in the dismissal of the appellant as a tenured teacher in the Monticello School System.

William A. Kelly was a certified classroom teacher employed by the Board of Education of Monticello, Kentucky under a "continuing service contract", as that term is used and defined in KRS 161.720. By letter dated May 11, 1976, signed by the chairman and the secretary of the Board of Education, Kelly was given notice that the Board was terminating his teaching contract, and informed that the notice was being sent to him to apprise him that the charges, as grounds for the termination, pursuant to KRS 161.790, were as follows:

1. Insubordination, by refusing to obey the rules relating to punishment of students, in particular, the beating of Kenney Catron and David Hicks with a stick on November 6, 1975.

2. Physical and mental disability, due to your repeated confinement in psychiatric wards and your frequent absences from classes. This includes the fact that you are presently under psychiatric treatment after being released from the psychiatric ward in Lexington, Kentucky, after having been discharged since your requested leave of absence.

3. Conduct unbecoming a teacher in losing control of your temper, as set out in No. 1 above.

4. Repeated alcohol and drug problems causing absences and inefficiency.

5. Neglect of your teaching duties.

A hearing before the Board on these charges was set for June 10, 1976, and within ten days of the receipt of the notice, Kelly made a written response to the Board that he intended to appear at said hearing. At the hearing, Kelly was represented by counsel and objected that the charges against him were not in sufficient detail and objected to the hearing being prosecuted by the Board's regular attorney. He conducted a voir dire examination of the individual members of the School Board to determine whether any of the members had formed an opinion as to the truth of the charges or an opinion otherwise against him. After this examination, Kelly, through counsel, asked each member of the Board to disqualify himself from considering the charges, since each member had stated that he believed Kelly to be guilty, in some degree, of the charges made against him. Each Board member refused to disqualify himself.

Evidence was presented to the Board by the attorney representing the Board, at the

conclusion of which, counsel for Kelly moved to dismiss all charges for lack of substantial evidence. Kelly declined to testify or offer any additional evidence.

The proof on behalf of the Board at the hearing before the Board was a statement of Dr. John W. Simmons, which informed the Board that Kelly was unable to return to work until August 30, 1976, and then only on a part-time basis. Additionally, the superintendent testified as to a series of events that had transpired in which the appellant had been repeatedly absent from work. There was evidence that he had used some drugs, and that he had been under psychiatric care. The superintendent additionally testified that, on May 10, 1976, he telephoned the appellant's residence in order to determine whether Mr. Kelly would be able to resume his teaching duties. At that time, he was advised by Mr. Kelly's wife that Kelly was still a patient at the University of Kentucky Medical Center.

On June 15, 1976, the Board voted to terminate Kelly's teaching contract, and made written findings of fact in support of its decision, and found that he was physically and mentally unable to perform the duties of a full-time teacher.

Subsequently, an appeal of this termination of his contract was taken to the Wayne Circuit Court. A transcript of the evidence taken before the Board was filed, and the case was heard by the circuit court on August 30, 1976.

At that hearing, Kelly stated that he did not wish to introduce any additional evidence, and that the hearing should be based upon the transcribed hearing before the Board. Counsel for the Board, at the circuit court hearing, requested an opportunity to obtain additional medical evidence, by way of deposition, to which, Kelly objected. The court allowed the Board to take the medical deposition as they requested, but deferred a ruling on whether he would or would not consider such proof. The trial judge stated that, if he did decide to use such deposition as evidence, counsel for Kelly would be given an opportunity to take evidence by deposition to rebut this testimony.

On September 15, 1976, the Board took the deposition of Dr. David C. Jacobs, who had assisted in the treatment of Kelly while Kelly was a volunteer patient at the Medical Center during the month of April, 1976. The counsel for Kelly was present at the taking of this deposition.

The evidence of Dr. Jacobs, was to the effect that he had no opinion as to whether Kelly could return to his teaching duties in the fall of 1976, but he diagnosed his condition as a depressive reaction. Dr. Jacobs had also taken the history of Kelly, which showed that he had used the drug darvon excessively and had taken a leave of absence for the school year of 1975–1976, after it developed, in November of 1975, that the severity of his illnesses prevented him from continuing that year as a teacher. Dr. Simmons had said that Kelly suffered from chronic depression.

The appellant did not offer any other proof, nor did he ask to take any depositions to rebut the testimony of Dr. Jacobs. On appeal, the circuit court affirmed the School Board's determination that Kelly's contract be terminated because of physical and mental disability.

■ On this appeal, the appellant, Kelly, argues that procedural due process required more than notice of the charges and an opportunity to be heard thereon. It is his contention that due process requires that he have the right to have those charges initially tried before an impartial tribunal or decision maker.

Appellant, in his argument for his right to an impartial tribunal, among other cases, relies on *Ward v. Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), which held that a defendant accused of a criminal traffic offense was entitled to a neutral and impartial hearing in the first instance. In that case, the mayor of a city in Ohio, was acting in a judicial capacity in the trial of traffic offenses. The court held that the defendant in such cases was entitled to a neutral and impartial trier of the fact, and that the mayor, in this instance, was not

neutral nor impartial, because he had a pecuniary interest in the outcome of the case.

That case differs from the case at bar, in that, although Kelly certainly has a vested property right in his continuing contract, he is not accused of a crime. Furthermore, the initial decision maker, in *Ward, supra,* had an actual pecuniary interest in the outcome.

KRS 161.790(6) provides for a direct appeal to the circuit court by a teacher terminated as Kelly was. And a teacher so terminated is entitled to a trial de novo in circuit court. The above statute permits the holding of additional hearings and the consideration of additional evidence if the trial court considers it advisable.

Both sides in this case have cited *Osborne v. Bullitt County Board of Education,* Ky., 415 S.W.2d 607 (1967). It should be pointed out that *Osborne v. Bullitt County Board of Education, supra,* differs from this case in that the members of that School Board refused to submit to a voir dire examination by the teacher. The court concluded, in *Osborne,* that a de novo hearing in circuit court, where the evidence presented before the Board, along with any other relevant proof offered in the circuit court, could be judicially reviewed in a de novo proceeding, satisfied the requirements of due process.

Additionally, in the case of *Bell v. Board of Education of McCreary County,* Ky., 450 S.W.2d 229 (1970), the court recognized that the prospect of a fair trial at the Board level is an "illusion." However, the court once again held that the statutory provision for a trial de novo at the circuit court level was intended to cure any due process defects in the hearing before the Board.

Furthermore, the Supreme Court of the United States in *Hortonville Joint School District No. 1 v. Hortonville Educational Association,* 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1, 9 (1976) stated:

> Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker . . . Nor is a decisionmaker disqualified simply because he has taken a position, even

in public on a policy issue related to the dispute, in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances. . . .

Although we must agree with the appellant that the prospect of due process hearing at the Board level is more illusory than real, we adhere to the decision of the United States Supreme Court. We hold that the opportunity for a de novo hearing at the circuit court level with the right to offer additional evidence, if so desired, was intended by the legislature to cure any deficiencies in the due process hearing at the Board level. In law and in fact, the teacher whose contract has been terminated will receive an impartial and due process hearing at the circuit court level, and this is sufficient.

■ It is next contended by the appellant that the finding and the conclusion of the Board, as to his mental and physical disability, was not supported by substantial evidence. We disagree.

The Board had before it a record of Kelly's absenteeism due to physical and/or mental disabilities. Many times he had been unable to attend classes because of his illnesses, and had, as a matter of fact, been granted a leave of absence to allow psychiatric care on at least one occasion prior to the 1976–1977 school year. In addition, it was the statement of Dr. Simmons, that Kelly would be unable to return to work at all until August 30, 1976, and then only on a part-time basis. Mr. Kelly's position as a teacher in that school system was as a full-time teacher. There was also evidence that, as late as May 10, 1976, Mr. Kelly was still a patient in the University of Kentucky Medical Center. The above evidence alone supports the Board's decision.

The evidence most favorable to the appellant was a letter written by Dr. Simmons, dated June 3, 1976, which stated that Mr. Kelly was "under good control" and "able to return to his duties as a teacher." However, as stated in the *Bell* case, *supra,* at page 233: " . . . courts will not choose

between conflicting testimony on which the school board has the right to back its decision."

We find that there was substantial evidence of probative value to support the decision by the Board, and that said decision was not arbitrary. Likewise, we cannot say that the findings of the trial court should be set aside as clearly erroneous. CR 52.01.

■ It is next contended, by the appellant, that it was error for the circuit court to permit the additional testimony of Dr. Jacobs to be taken at the circuit court level. Again, we disagree. The statute mentioned herein states that the circuit court may hold such additional hearings as it deems advisable, at which hearings, the court may consider evidence, in addition to the transcript and the record of the Board hearing. This makes it a discretionary matter with the court.

■ The appellant contends that the right to hear this evidence is limited only to the evidence which may be offered by the teacher. We cannot agree with this position. It would be manifestly unfair to grant the right to offer additional evidence, if the court deems it advisable, to one side and not to the other side. We hold that it was the manifest intention of the legislature that either side have an opportunity to present additional evidence at the de novo hearing, if the circuit court deems it advisable.

Judgment affirmed.

All Concur.