RENDERED:  FEBRUARY 20, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0005-DG

LOUISVILLE HISTORICAL LEAGUE, INC.                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                    NOS. 2023-CA-0082 & 0134
JEFFERSON CIRCUIT COURT NO. 21-CI-02393


LOUISVILLE/JEFFERSON COUNTY METRO                    APPELLEES
GOVERNMENT; THE LEGISLATIVE BODY
OF THE LOUSIVILLE/JEFFERSON COUNTY
METRO GOVERNMENT; HISTORIC
LANDMARKS AND PRESERVATION
DISTRICTS COMMISSION; AND OMNI
LOUISVILLE, LLC


**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>REVERSING</u>**

This case is before the Court upon discretionary review from the Court of

Appeals' decision which held the Appellant, Louisville Historical League, Inc.

(LHL), failed to comply with the pleading requirements of a local ordinance

thereby depriving the Jefferson Circuit Court of subject-matter jurisdiction. In

*Kenton Cnty. Bd. of Adj. v. Meitzen*, we held that KRS[1] 100.347(1) "has a

standing component – that a party must be 'injured or aggrieved' by the board's

action – [but] in order for a circuit court to exercise jurisdiction that party must

*claim* their injury in the complaint." 607 S.W.3d 586, 598 (Ky. 2020). The Court

---

[1] Kentucky Revised Statutes.

of Appeals below determined that the jurisdictional prerequisite of claiming to be injured or aggrieved went to the circuit court's subject matter jurisdiction. Upon review, we reverse and clarify that failure to sufficiently plead injury or aggrievement is an issue of particular-case jurisdiction.

This case, however, affords the opportunity to do more than clarify a discrete decision of this Court. The proposition that failure to strictly comply with KRS 100.347(1) involves subject matter jurisdiction is based upon the rule that all appeals from any administrative decision are matters of legislative grace. While that rule has been cited by a plethora of cases over several decades, it fails to account for another line of cases which hold that judicial review of administrative decisions for arbitrariness is in fact rooted in the constitutional authority of the judiciary itself. The harmonization of these two otherwise antithetical rules is found in the distinction between subject matter jurisdiction and particular-case jurisdiction. We therefore clarify that the judiciary has inherent authority by virtue of the constitution to review administrative decisions for arbitrariness and this authority confers subject-matter jurisdiction. The legislature, however, may prescribe the terms, to some extent, upon which a party may have recourse to the judiciary to review an administrative decision, and this concerns particular-case jurisdiction.

## I.    Facts and Procedural Posture

In 2014, Louisville/Jefferson County Metro Government (LJCMG) entered into a contract with Omni Louisville, LLC (Omni). The terms of this contract, in

2

pertinent part, provided that Omni would purchase the "Water Company Block" from LJCMG; said property would be divided into two parcels; and one of those parcels contained Liberty Hall at 211 West Muhammed Ali Boulevard. The contract stipulated that LJCMG would demolish all buildings on the subject parcel after Omni had provided it with reasonable notice of its intent to develop the parcel; and that in furtherance of this promise, LJCMG would remove all legal impediments to demolition of any structures, including current or potential designations as landmarks.

On October 24, 2019, the Louisville/Jefferson County Metro Council (Metro Council) passed a resolution directing the Historic Landmarks and Preservation Districts Commission (Landmarks Commission) to begin landmark review of Liberty Hall. It was made clear to Metro Council prior to granting approval that the contract with Omni would be implicated if Liberty Hall was designated a landmark; several council members, the County Attorney's Office, the Director for Develop Louisville, and the Chair of the Planning and Zoning Committee all mentioned or discussed it. The Landmarks Commission held a public hearing on November 19, 2020. Several persons came forth to testify for or against designation but the particular evidence is not relevant to our disposition so it will not be detailed. What matters is the Landmarks Commission voted 10-2 in favor of designating Liberty Hall a landmark.

Metro Council invoked its authority to review this decision pursuant to a local ordinance, LMCO § 32.260(Q). It conducted its review on March 25, 2021.

3

During this meeting, discussion ranged from the intrinsic architectural merits of Liberty Hall as a landmark; to the legacy of racism in Louisville generally and the Odd Fellows organization specifically; and the contract with Omni as well as LJCMG's budget for Fiscal Year 2020-21. Metro Council voted to reject Liberty Hall's designation as a landmark, issuing its own findings that Liberty Hall[2] was tainted by a legacy of racism and segregation; that it had no association with any notable architects; and that changes to the interior called into question its integrity as a landmark.

LHL sought review of this decision in the Jefferson Circuit Court. At no time in the proceedings before the circuit court did any party raise an issue of statutory standing, particular-case jurisdiction, or subject-matter jurisdiction. It was for all intents and purposes a non-issue, even though subject-matter jurisdiction is non-waivable. The Circuit Court—then-Judge Audra Eckerle presiding—upon a motion for summary judgment by LHL, concluded that Metro Council had violated procedural due process. Following our decision in *Hilltop Basic Resources, Inc. v. Cnty. of Boone*, 180 S.W.3d 464 (Ky. 2005), the court held "the outcome of this particular hearing was prejudged and predetermined several years in advance," based on the 2014 contract with Omni. The court further stated, "[i]t is one thing for an executive adjudicator, or a legislator in this case, to state a vague preference for a particular policy

---

[2] Specifically, it is the Odd Fellows fraternal organization that was found to have a legacy of racism and segregation due to its prohibition upon African-Americans being made members until 1971. Liberty Hall is also called the Odd Fellows Building throughout the record.

direction . . . . It is quite another for the decision-maker to set the outcome literally years in advance in a written agreement. This doesn't even begin to clear the bar for proper procedural due process. It is a clear conflict of interest." The court expounded further that "a written agreement with a particular party regarding the outcome of a hearing is a clear example of blatant favoritism. The written promise to remove any impediments to the demolition of Liberty Hall leaves no question as to how the hearing to remove the landmark status would be decided." The court cited not merely the contract with Omni but the "repeated, blunt statements of some council members" as evidence that the decision was tainted by blatant favoritism, and concluded the hearing was a "mere pretext[.]" Lastly, the court noted that "Metro Council conceded that its members reviewed evidence outside the record, thereby additionally violating due process."

At the Court of Appeals the issue of jurisdiction was first raised. The Court of Appeals confined itself to treating this issue. It stated, first,

> Kentucky's circuit courts only have subject matter jurisdiction "to review the actions or decisions of administrative agencies" when "authorized by law[,]" KRS 23A.010(4), because "[a]n appeal from an administrative decision is a matter of legislative grace ...." *Spencer Cnty. Pres., Inc. v. Beacon Hill*, 214 S.W.3d 327, 329 (Ky. App. 2007). It is also well-established that a party seeking to appeal an administrative agency's decision must strictly comply with the legislative provisions authorizing the appeal. *Kenton County Bd. of Adjustment v. Meitzen*, 607 S.W.3d 586, 595 (Ky. 2020). Failure to do so deprives any reviewing court of subject matter jurisdiction. *Id.*

(internal footnotes omitted). The Court of Appeals found *Meitzen* to be controlling because the local ordinance at issue, LMCO § 32.263(C), states,

5

> An appeal from the Council shall be taken by *any person or entity claiming to be injured or aggrieved by the final action* of the Council to the Jefferson Circuit Court within 30 days of the Council's final action, which shall be defined as the date on which the Council votes to uphold, amend, or overturn the decision of the Commission on the proposed designation.

*Meitzen* concerned a statute containing similar language, to wit: "*Any person or entity claiming to be injured or aggrieved by any final action* of the board of adjustment shall appeal from the action to the Circuit Court of the county in which the property, which is the subject of the action of the board of adjustment, lies." KRS 100.347(1) (emphasis added). Thus, the Court of Appeals held the ordinance "requires an appealing party to provide factual allegations in their complaint stating how they were particularly injured, aggrieved, or harmed by the decision of the administrative entity."

Taking up review of LHL's Complaint in the Circuit Court, the Court of Appeals stated,

> LHL's participation and presentation of evidence at a *public* hearing; its disappointment with and criticisms of the outcome of that hearing; and any alleged "impairment to LHL's mission to promote the appreciation and preservation of Metro Louisville's cultural heritage and historic environment," or its interest "in preserving the character and aesthetic value of historic structures in and surrounding Louisville," are insufficient for purposes of LMCO § 32.263(C). At most, these allegations either implicate an injury to the general public, or merely satisfy the second element of demonstrating associational standing in federal courts, namely, that "the interests [LHL] seeks to protect are germane to the organization's purpose[.]" *See Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 343, 97 S. Ct. 2434, 2441, 53 L. Ed. 2d 383 (1977). They do not show how LHL was *particularly* injured, aggrieved, or harmed by Metro Council's decision, as required by LMCO § 32.263(C).

(internal footnotes omitted). Thus, the Court of Appeals concluded LHL

6

failed to set forth any facts as to the harm, damage, or injury it suffered or will suffer . . . therefore failed to satisfy the "injured or aggrieved" requirement of LMCO § 32.263(C). Consequently, an essential condition for invoking judicial power was not met, and the circuit court lacked subject matter jurisdiction to review this matter.

LHL sought discretionary review in this Court which we granted. We now proceed to the merits and further facts will be developed as necessary.

## II. Standard of Review

This matter is before us upon review of a motion for summary judgment granted by the trial court. Summary judgments shall not be granted unless "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[3] 56.03. Our review is *de novo* as summary judgments involve no findings of fact and only concern questions of law. *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016). Likewise, "[t]he question of jurisdiction is ordinarily one of law, meaning that the standard of review to be applied is *de novo*." *Appalachian Regional Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53-54 (Ky. 2007). Finally, as to the merits of Metro Council's action, our review is for arbitrariness. Arbitrariness concerns "(1) action in excess of granted powers, (2) lack of procedural due process, and (3) lack of substantial evidentiary support[.]" *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450, 454 (Ky. 1964). Nonetheless, "[i]t is possible that other apparently

---

[3] Kentucky Civil Rules of Procedure.

unrelated matters of law may be considered. Judicial review of legal questions cannot be impaired by the legislature." *Id.* at 456-57 (internal footnote omitted).

## III.   Analysis

### A. *Meitzen* and Particular Case Jurisdiction

"[S]ubject matter jurisdiction does not mean 'this case' but *'this kind of case.'*" *Duncan v. O'Nan,* 451 S.W.2d 626, 631 (Ky. 1970).

> [A] court is deprived of subject matter jurisdiction only where that court has not been given, by constitutional provision or statute, the power to do anything at all. To determine subject matter jurisdiction, the pleadings should be examined and taken at face value. The court has subject matter jurisdiction when the "kind of case" identified in the pleadings is one which the court has been empowered, by statute or constitutional provision, to adjudicate.

*Daugherty v. Telek,* 366 S.W.3d 463, 466 (Ky. 2012). Subject matter jurisdiction is binary—"[a] court either has it or it doesn't," and it cannot be given by a party's "waiver, consent, or estoppel[.]" *Nordike v. Nordike,* 231 S.W.3d 733, 738 (Ky. 2007).

On the other hand, particular-case jurisdiction "refers to the authority and power of the court to decide a *specific* case, rather than the class of cases over which the court has subject-matter jurisdiction." *Id.* (quoting *Milby v. Wright,* 952 S.W.2d 202, 205 (Ky. 1997)). "This kind of jurisdiction often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts[.]" *Id.* In brief, it has been "our frequent holding that errors in the procedural invocation of a court's jurisdiction relate to particular-case jurisdiction, not general subject-matter jurisdiction[.]" *Commonwealth v*

8

*Steadman*, 411 S.W.3d 717, 723 (Ky. 2013). As we have previously tried to explain,

> An apt example of this type of jurisdiction would be the instance of the filing of a notice of appeal in a civil case on the thirty-second day after the trial court entered judgment. The Court of Appeals has the authority to decide civil appeals in general, but lacks the power to adjudicate a case filed too late.

*Milby*, 952 S.W.2d at 205.

Therefore, the holding of *Meitzen*, 607 S.W.3d at 598, that KRS 100.347(1) requires a party to allege facts of particularized injury or aggrieve-ment "in order for a circuit court to exercise jurisdiction," was a statement regarding particular-case jurisdiction, not subject matter jurisdiction. This is amply demonstrated by the fact that the *Meitzen* decision concerned review of a decision of the Kenton County Board of Adjustment. *Id.* at 589. KRS 100.347(1) states "[a]ny person or entity claiming to be injured or aggrieved by any final action of the board of adjustment *shall appeal from the action to the Circuit Court* of the county in which the property, which is the subject of the action of the board of adjustment, lies." (emphasis added). Thus, the Kenton Circuit Court had subject matter jurisdiction, as granted by statute, to hear the "kind of cases" that seek review of the Board of Adjustment's decisions in general.

> Likewise, the ordinance at issue here states
> *An appeal from the Council shall be taken* by any person or entity claiming to be injured or aggrieved by the final action of the Council *to the Jefferson Circuit Court* within 30 days of the Council's final action, which shall be defined as the date on which the Council votes to uphold, amend, or overturn the decision of the Commission on the proposed designation.

LMCO § 32.263(C) (emphasis added). This is clearly a statement regarding subject matter jurisdiction because it positively grants the Jefferson Circuit

Court power to hear such appeals, and negatives any power of any other court, such as the Jefferson District Court, to hear such appeals. "The authority to determine a type of case . . . is subject-matter jurisdiction." *Milby*, 952 S.W.2d at 205. Therefore, whether a party has sufficiently pled an injury or aggrievement in their complaint refers "more accurately to the propriety of the exercise of jurisdiction rather than to the *existence* of jurisdiction." *Steadman*, 411 S.W.3d at 722-23. Moreover, that sufficiently pleading injury or aggrievement affects particular-case jurisdiction "is also shown by the fact that they turn on particular facts, rather than whether the case fits within a statutorily or constitutionally defined category." *Id.* at 724. More precisely, they turn on the *allegation* of particular facts which, if true, results in a legal injury or aggrievement. *Meitzen*, 607 S.W.3d at 593 ("Meitzen and Nageleisen failed to provide any factual allegations to support a claim that they themselves were injured or aggrieved in some way by the Board's action.").[4]

But we do not need to investigate whether LHL sufficiently pled injury or aggrievement. "[W]here a court has general jurisdiction of the subject matter, a lack of jurisdiction of the particular case, as dependent upon the existence of particular facts, may be waived." *Collins v. Duff*, 283 S.W.2d 179, 182 (Ky. 1955). In a variety of cases, we have held that challenging particular-case jurisdiction for the first time at the Court of Appeals or this Court, but not at

---

[4] The Court of Appeals, in an unpublished decision rendered after the motion for discretionary review was granted in this case, reached the same conclusion that failure to allege injury or aggrievement pursuant to KRS 100.347(3) is an issue of particular-case jurisdiction and not subject matter jurisdiction. *City of Prospect, Kentucky v. Louisville Metro Government*, 2024 WL 4714979 (Ky. App. Nov. 8, 2024).

10

the circuit or district court (whichever applies), constitutes waiver. *Steadman,* 411 S.W.3d at 724-25; *Kelly v. Commonwealth,* 554 S.W.3d 854, 861 (Ky. 2018); *Commonwealth v. B.H.,* 548 S.W.3d 238, 245 (Ky. 2018). It is agreed by all that the question of jurisdiction in this case was raised for the first time at the Court of Appeals below. The Appellees waived the issue. The Court of Appeals is reversed.

### B. Subject Matter Jurisdiction and Administrative Appeals

Having made that clear, we now take the opportunity to clarify an issue of utmost importance, since it relates not merely to the reasoning employed by the Court of Appeals below but goes to the heart of judicial authority to review administrative actions. As indubitably demonstrated by the Court of Appeals' language, it began with the premise that

> Kentucky's circuit courts only have subject matter jurisdiction "to review the actions or decisions of administrative agencies" when "authorized by law[,]" KRS 23A.010(4), because "[a]n appeal from an administrative decision is a matter of legislative grace ...." *Spencer Cnty. Pres., Inc. v. Beacon Hill,* 214 S.W.3d 327, 329 (Ky. App. 2007).

There is a plethora of cases stating the failure to strictly comply with a statute in taking an administrative appeal is jurisdictional, but this Court has spoken contrarily as to whether that is specifically an issue of subject matter or particular-case jurisdiction. For instance, the cases of *Louisville Gas & Elec. Co. v. Hardin & Meade Cnty. Property Owners for Co-Location,* 319 S.W.3d 397 (Ky. 2010) and *Taylor v. Kentucky Unemployment Ins. Com'n.,* 382 S.W.3d 826 (Ky. 2012) can be read as supporting the former while the cases of *Spears v.*

11

*Goodwine*, 490 S.W.3d 347 (Ky. 2016) and *Kentucky Unemployment Ins. Com'n. v. Wilson*, 528 S.W.3d 326 (Ky. 2017) are read in support of the latter. But hovering above all these cases is a separate line of decisions holding that review of administrative decisions for arbitrariness is in fact founded upon the constitution and does not depend on a statute.

The doctrine of legislative grace—that there is no right to appeal from the decision of an administrative agency but upon strict compliance with what terms a statute prescribes—is traced in Kentucky to the case of *Roberts v. Watts*, wherein the Court held

> The right of appeal in administrative as well as other proceedings does not exist as a matter of right. When the right is conferred by statute, a strict compliance with its terms is required. It is the general rule that where the conditions for the exercise of the power of a court are wanting the judicial power is not, in fact, lawfully invoked. The appeal, not having been properly perfected, the Franklin Circuit Court was without jurisdiction and properly dismissed the appeal.

258 S.W.2d 513, 513 (Ky. 1953).[5] But the facts were that the operative statute at the time "requires that the petition on appeal shall assign all errors relied upon.' The petition here only alleges that the Department has permanently revoked appellant's certificate." *Id.* There was no doubt that the Franklin Circuit Court could hear that appeal had the statute been complied with, only that the petition failed to allege the specific errors required by the statute. This

---

[5] There is in fact an earlier case, *City of Middlesboro v. Louisville & N.R. Co.*, 252 S.W.2d 680 (Ky. 1952), but it does not speak in terms of administrative review and is distinguishable since it involved an attempted appeal from the order of the Railroad Commission which at the time was a constitutional body. *Id.* at 682 (citing the former Ky. Const. § 209, repealed by ballot referendum in 2000).

is analogous to the case before us, where there is no doubt Jefferson Circuit Court has subject matter jurisdiction to hear appeals from the decisions of the Metro Council concerning landmark designations, but it has been argued LHL did not comply with the requirements of properly alleging facts demonstrating injury or aggrievement from Metro Council's decision. In brief, the first case invoking the doctrine of legislative grace from appeals of administrative decisions concerned particular-case jurisdiction, not subject matter jurisdiction. The next cases reported to cite *Watts* all broadly followed the same pattern, where there was no dispute the circuit court had jurisdiction to review but only whether the appellant had complied with the statute when *invoking* that jurisdiction. *Ferguson v Garland*, 352 S.W.2d 70 (Ky. 1961); *Kentucky Utilities Co. v. Farmers Rural Elec. Co-op Corp.*, 361 S.W.2d 300 (Ky. 1962); *Dept. of Rev. v. Bederman*, 408 S.W.2d 613 (Ky. 1966); *Com., Dept. of Public Safety v. Lewis*, 441 S.W.2d 142 (Ky. 1969); *Bd. of Adj. of City of Richmond v. Flood*, 581 S.W.2d 1 (Ky. 1978). Thus, all these cases from *Watts* to *Flood,* concern "errors in the procedural invocation of a court's jurisdiction [and] relate to particular-case jurisdiction, not general subject-matter jurisdiction[.]" *Steadman*, 411 S.W.3d at 723.

More importantly, however, in *American Beauty Homes* the Court was confronted with an appeal from a zoning decision concerning a statute which granted the circuit court the power to hold a trial *de novo* in review of a decision of the zoning commission. 379 S.W.2d at 452. This question required the Court "to re-examine *comprehensively* our administrative appeal procedure

13

and former decisions." *Id.* at 453 (emphasis added). After concluding *de novo*

review was inappropriate, indeed unconstitutional, the Court then considered

the question of what the scope of review under the rest of the statute was. *Id.*

at 456. In answer to this question, the Court stated simply that the statute

provided for an appeal, and the constitution decided its scope. *Id.* But in

making that statement the Court noted:

> judicial review of administrative action is concerned with the
> question of *arbitrariness*. On this ground the courts will assume
> jurisdiction even in the absence of statutory authorization of an
> appeal. *Schloemer v. City of Louisville*, 298 Ky. 286, 182 S.W.2d
> 782; *Hatch v. Fiscal Court of Fayette County*, Ky., 242 S.W.2d
> 1018. There is an inherent right of appeal from orders of
> administrative agencies where constitutional rights are involved,
> and section (2) of the Constitution prohibits the exercise of
> arbitrary power.

*Id.* (internal footnotes omitted). The Court stated in unambiguous language

that the judiciary "will assume jurisdiction" in spite of a lack of statutory

authorization. That is not a statement of the *scope* of appellate review, but of

the *power* of appellate review. It then stated that an "inherent right of appeal"

exists where constitutional rights are concerned from administrative agencies.[6]

---

[6] That this is the correct understanding of *American Beauty Homes* is proven by
*Reis v. Campbell Cnty. Brd. of Ed.*, where we stated,

> [j]udicial review does not hinge upon whether the Board [of Education]
> has a property or liberty interest at stake, but upon whether the tribunal
> or administrative body acted arbitrarily and without substantial
> evidence. It is well settled in Kentucky that an aggrieved party, including
> a corporation, has an inherent right to seek judicial review of arbitrary
> administrative actions.

938 S.W.2d 880, 885 (Ky. 1996). "[B]ecause the Board requests judicial review based
upon the arbitrariness of the tribunal's decision, *American Beauty Homes* mandates
that the Board must be allowed to seek judicial review in the circuit Court." *Id.* at 886.

14

In the *Hatch v. Fiscal Court of Fayette Cnty.* case cited by the Court, the proposition was held unequivocally that "it is undisputed that courts have the inherent power to prevent an administrative body from proceeding illegally, arbitrarily and capriciously to the injury of another." 242 S.W.2d at 1018. In the *Hatch* case, there was no statutory authorization provided for an appeal from the zoning question at issue. *Id.* In another case where a statute failed to provide for a right of appeal from an administrative decision, the Court stated, "[t]he right to resort to the courts exists in any event if 'the decision is wholly unsupported by the evidence, or is wholly dependant [sic] upon a question of law or is seen to be clearly arbitrary or capricious.'" *Foster v. Goodpaster*, 161 S.W.2d 626, 627 (Ky. 1941) (quoting *Silberschein v. United States*, 266 U.S. 221, 225 (1924)). Finally, again in 1941, the Court stated what ought to be considered the death knell of the doctrine of legislative grace for administrative decisions—

> Constitutional courts are not subservient to statutory boards of administration. *The right to resort to the courts is implicit in the terms of Section 14 of the Constitution of Kentucky, declaring that all courts shall be open and every person shall have a remedy by due course of law for any injury to his person or property or reputation. It is the inherent power of the courts to scrutinize the acts of such administrative tribunals wherein the person or property rights of an individual have been adjudicated, and no special provision of a statute is necessary to confer authority already possessed by them under the constitution.* However, it is generally recognized that the legislative branch of the government may vest considerable discretion in administrative boards and declare to what extent their findings of fact shall be accepted, and, in a limited degree,

---

*Reis* was a case wherein the right to appeal was not statutorily provided to the Board. *Id.* at 881.

15

may prescribe the terms upon which recourse to the courts may be had. But where no question of fact is at issue and only questions of law are involved, the arm of the court may not be shortened, except perhaps in a matter of limitations of time in which to bring the case to the court. It is a question of law whether a board has acted arbitrarily or capriciously, such as without having competent evidence to support its finding or decision. In such a case, as it is in all questions of law, the courts will intervene and exercise the judicial power without restriction to protect private rights.

*Kendall v. Beiling*, 175 S.W.2d 489, 491 (Ky. 1941) (internal citations omitted) (emphasis added).

Thus, the *Kendall* court grounded an inherent right of appeal from administrative decisions involving person or property in Section 14 of our constitution; and *American Beauty Homes* found that Section 2 provides another source for that right as well as providing the scope of that review.[7] By grounding a citizen's inherent right of appeal from administrative decisions in

---

[7] In *Pritchett v. Marshall*, the Court stated,

[t]he same inherent authority that legitimates a review where none is allowed by statute would equally justify earlier intervention if the threatened invasion were sufficiently probable and the circumstances such that a review could not provide adequate relief. In this case, despite a certain absurdity in the spectacle of one statutory agency of the state suing another, it may be assumed that the legislature . . . did not intend to confer arbitrary power on the Board and thus waive and deny to its own agencies and departments a right guaranteed to others by § 2 of the Constitution; and if this theory is correct, the standing of an administrative department to bring a suit such as this, and the right of a court to hear it, would be indispensable to the preservation of that right.

375 S.W.2d 253, 257-58 (Ky. 1963). Thus, the Court located the right in Section 2 of the constitution, despite its citation to *Kendall*. *Id.* at 257. It is unnecessary to resolve this split because there is nothing to resolve. Sections 2 and 14 in tandem provide an inherent right of appeal in the citizen and an inherent authority of the judiciary to review administrative acts for arbitrariness.

the constitution, and an inherent constitutional authority of the judiciary to take jurisdiction of such decisions for arbitrariness even in the absence of statutory authority, the doctrine of legislative grace fails if it is invoked to deny the subject matter jurisdiction of the judiciary in administrative appeals.

What is most striking about *Kendall*'s and *American Beauty Homes*' affirmation of a right to appeal from administrative decisions for arbitrariness is not that they so clearly contradict the doctrine of legislative grace, if said doctrine is understood as denying the subject matter jurisdiction of the judiciary; but that the right of appeal was affirmed at a time when there was no constitutional right of appeal from court judgments. *See Bluegrass Trust for Historic Preservation v. Lexington Fayette Urban Cnty. Government Planning Com'n.*, 701 S.W.3d 196, 206-07 (Ky. 2024). The key is *Kendall*'s citation to Ky. Const. § 14 and the guarantee of access to the courts. *Kendall*, 175 S.W.2d at 491. While a court judgment was only appealable if the legislature had granted the appeal by statute, at least it could be said that a person who did not have the grace of an appeal nonetheless had their day in a court of law. That, however, is not true of administrative decisions. In those cases, the executive branch (or in this case the local legislative body) is making a decision affecting a liberty or property interest of Kentuckians; and to premise a right of appeal from such decisions on a statutory authorization could, theoretically, immunize government action from judicial scrutiny. From that perspective, it is rather obvious that our predecessors used Sections 2 and 14 of our constitution to make effective a more fundamental principle—that in a system of tripartite

17

powers, the judiciary's role is to protect the liberty and property interests of the citizenry from tyrannical, i.e., arbitrary, government. *Id.* To fulfill this purpose, it is necessary to deny a doctrine that, even if only potentially, could foreclose judicial scrutiny of such decisions.

Because the distinction between subject matter jurisdiction and particular-case jurisdiction enables us to resolve this split in authority, we make it explicit that pursuant to Sections 2 and 14 of the Kentucky Constitution, a citizen has an inherent right of appeal from administrative decisions and the judiciary has general subject matter jurisdiction to review administrative decisions for arbitrariness. Compliance with particular statutory requirements on how to invoke that jurisdiction will always therefore be an issue of particular-case jurisdiction. Alleged failures to comply with the statutory requirements to invoke the jurisdiction of the reviewing court must be raised in that reviewing court. The failure to raise the issue of compliance before the reviewing court constitutes waiver.

### C.    No Arbitrariness in the Metro Council's Decision

The issue of arbitrariness presented by the underlying facts of this case concerns the lack of procedural process. The leading case is *Hilltop Basic Resources, Inc. v. Cnty. of Boone,* 180 S.W.3d 464 (Ky. 2005). In *Hilltop*, we stated, "[i]n the administrative or legislative context . . . the concept of impartiality is, by necessity and by function, more relaxed and informal." *Id.* at 468. "The fundamental requirement of procedural due process is simply that all affected parties be given 'the opportunity to be heard at a meaningful time

18

and in a meaningful manner.'" *Id.* at 469 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)).

> However, decision makers are not free to be biased or prejudicial when performing nonjudicial functions. To the contrary, any bias or prejudicial conduct which demonstrates "malice, fraud, or corruption" is expressly prohibited as arbitrary. . . Furthermore, decisions tainted by conflicts of interest or blatant favoritism are also prohibited as arbitrary.

*Id.* (internal citations omitted).

While *Hilltop* is not controlling, it is instructive. In *Hilltop*, we were concerned with drawing a line between legitimately expressed general policy preferences of elected officials and arbitrary prejudgment of the specific proposal for approval of subsurface mining. *Id.* at 467. This dispute focused on the concept of an impartial tribunal and its applicability in the administrative and legislative arena. *Id.* at 469. We upheld the decision of the circuit court because there were

> no allegations of malice, fraud, corruption, or other conflicts of interest on the part of the Fiscal Court members. Moreover, despite the members' preexisting opinions regarding the community effects of subsurface mining in general, we find nothing in the record which indicates that these members did not seriously or honestly consider Hilltop's proposal.

*Id.* at 470. For example, two of three fiscal court members had made statements to the effect that they would "never" vote to approve subsurface mining in Boone County because they believed the people in that county were opposed to it. *Id.* at 467. Accordingly, we held that a "decisionmaker [is not] disqualified simply because he has taken a position, even in public on a policy issue related to the dispute, in the absence of a showing that he is not capable

19

of judging a particular controversy fairly on the basis of its own circumstances[.]" *Id.* at 469 (quoting *Kelly v. Bd. of Ed. of Monticello Independent School Dist.,* 566 S.W.2d 165, 168 (Ky. App. 1977)). To have held otherwise would have greatly frustrated the ability of elected officials and candidates for public office to express their beliefs to voters thereby hindering the citizenry's ability to direct their local governments through elections.

The record here demonstrates that LJCMG had entered into a contract with Omni in 2014 obligating itself to not merely perform and pay for the demolition of any structures, including Liberty Hall, on the subject parcel; but that the LJCMG would ensure there were no legal impediments to such demolition, such as removing or preventing landmark designations. We disagree, however, with the Circuit Court's conclusion that the contract by itself established a clear example of blatant favoritism, conflict of interest, or otherwise demonstrated that the outcome of the hearing was predetermined.

A local government has the authority to contract and adhere to them. KRS 83A.130(8) (applicable to cities following mayor-council plan of government); *see generally Bd. of Ed. of Louisville v. Society of Alumni of Louisville Male High School*, 239 S.W.2d 931, 934 (Ky. 1951). It is not arbitrary government under Ky. Const. § 2 for a local government to consider a contract it has with another party when that contract is germane to the action being considered. It is necessary to draw this bright-line rule because of the potential for a Hobson's Choice being created by the contrary. We do not think it conducive to good government to put local governmental bodies in the position

20

of having to choose between strictly adhering to its own ordinances or potentially breach a contract.

There are lines, however, beyond which a local government may not pass. For example, local governments may not contract away their legislative power. *Society of Alumni*, 239 S.W.2d at 934. And it is black-letter law that "a court may refuse to enforce a contract on grounds of illegality where the contract has a direct objective or purpose that violates the federal or a state Constitution, a statute, an ordinance, or the common law." *Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005). Thus, even though the Omni contract was discussed somewhat by Metro Council prior to overturning the landmark designation, that in and of itself was not arbitrary; nor is there any evidence to show the purpose of the Omni contract is illegal under Louisville's ordinances, or that it was entered into with the purpose of subverting or contravening those ordinances.

In cases alleging conflicts of interest we have held it is sufficient to raise "a reasonable question of impartiality[,]" "that any reasonable person would recognize[.]" *Friends of Louisville Public Art, LLC v. Louisville/Jefferson Cnty. Metro Historic Landmarks and Preservation Districts Comm.*, 671 S.W.3d 209, 214 (Ky. 2023). A similar standard operates here. An action is tainted by blatant favoritism when any reasonable person would recognize the interests of a particular party were favored to the exclusion of others, such that the latter were deprived of a fair opportunity to be heard and have their position considered.

Looking to the March 25, 2021, meeting of Metro Council to overturn the landmark designation, it is readily apparent that the Omni contract was discussed only briefly by two council members, the most extensive comment occurring at the end of the discussion. What overwhelmingly predominated the discussion of Metro Council were the merits of Liberty Hall as an architectural landmark and its association with an organization that had excluded African-Americans from membership in the past. To conclude the Omni contract was a clear example of blatant favoritism or conflict of interest on this evidence is to assert after-the-fact that the contract was the sole reason in the minds of the majority of Metro Council members to vote to reverse the landmark designation despite the issues discussed and statements made at the hearing indicating otherwise. There is insufficient evidence to make that conclusion.

Instead, Metro Council issued its own findings. These findings include that Liberty Hall did not possess "sufficient integrity" as a building given the fact that it suffered a fire in 1987, necessitating removal of its original storefront, windows, and interior fabric. Metro Council noted that even the Commission's Designation Report admitted these repairs would make it unlikely for Liberty Hall to ever be registered on the National Register of Historic Places. Metro Council also concluded there was insufficient evidence to conclude Liberty Hall was an important architectural type of lodge building first, because of the aforementioned fire; and second, because it was used by multiple organizations in the past. Metro Council further concluded there was insufficient evidence to conclude the architect William Dodd designed Liberty

22

Hall, and that there was no evidence Liberty Hall represents innovative architectural design. Once again based on the 1987 fire, Metro Council concluded Liberty Hall cannot be considered to possess distinguishing characteristics of architectural design.

These findings, however, dovetail with LHL's next argument that Metro Council improperly considered new evidence at the hearing which was not presented to the Landmark Commission. For example, in rejecting the conclusion that William Dodd designed the building, Metro Council stated it is "not uncommon for buildings from this era to contain elements from construction kits that replicate distinctive features used by famous architects." LHL asserts no such evidence regarding "construction kits" was put before the Landmark Commission. But LMCO § 32.260(Q) states,

> If the Council timely initiates review of the Commission's final action, it shall, by letter (or email if specified), notify all parties set forth in § 32.260(M) of the date, time and place that the review will be conducted, and, if a public hearing will be held, the right of the public to comment at the public hearing on the proposal. *If a public hearing is not held by the Council*, or by one of its committees assigned to holding the review, *the Council shall confine its review to the information that was presented to the Commission.*

(emphasis added). The converse to the emphasized portion of this ordinance is that if a public hearing is held, then Metro Council is not limited to reviewing only that evidence presented to the Landmark Commission. While LHL has asserted the hearing on March 25, 2021, was closed to the public, the video record of the hearing demonstrates that several persons from the public addressed Metro Council on a variety of issues for at least the first thirty minutes of the hearing. It is not possible on such evidence for this Court to

23

conclude the hearing was closed to the public. Therefore, we cannot say it is arbitrary for Metro Council to have included findings regarding construction kits, even though such evidence was not put before the Landmark Commission.

Next, LHL disputes the findings of Metro Council regarding the association of Liberty Hall with racism. It explicitly notes that Liberty Hall was used in the past by exclusively African-American organizations and that the Odd Fellows fraternal organization's prior policy of limiting membership to Whites-only cannot be attributed to the building itself. Metro Council's findings are, perhaps, an extreme interpretation of the history of Liberty Hall; it essentially boils down to concluding one bad apple spoiled the bunch. But such disputes are the province of historians, not judges, and are to be resolved by the factfinder. "The . . . court's role as an appellate court is to review the administrative decision, not to reinterpret or to reconsider the merits of the claim, nor to substitute its judgment for that of the agency as to the weight of the evidence." *Louisville/Jefferson Cnty. Metro Gov. v. TDC Group, LLC*, 283 S.W.3d 657, 663 (Ky. 2009) (quoting *500 Associates, Inc. v. Natural Resources and Environmental Protection Cabinet,* 204 S.W.3d 121, 131 (Ky. App. 2006)).

Finally, LHL argues that the several references to the 1987 fire at Liberty Hall were inappropriate because the fire damaged the interior, and not the exterior, of Liberty Hall. LHL asserts, based upon the Landmark Commission's own interpretation, that building integrity only applies to exterior modifications. This Court, however, owes no deference to the Landmark

24

Commission's interpretation of its governing ordinances; the interpretation of ordinances presents a *de novo* question of law. *Commonwealth v. Jameson*, 215 S.W.3d 9, 15 (Ky. 2006); *Louisville Metro Health Dept. v. Highview Manor Ass'n, LLC*, 319 S.W.3d 380, 383 n.17 (Ky. 2010). To be designated a landmark, a building or site must "possess sufficient integrity" to meet two or more of the identified landmark criteria. LMCO § 32.260(O)(2). But "integrity" is defined by the ordinance as

> The authenticity of a structure or site's historic identity evidenced by survival of physical characteristics that existed during the structure or site's historic or prehistoric period. To retain historic integrity, a structure or site must possess some of the following aspects: location, design, setting, materials, workmanship, feeling, or association.

LMCO § 32.251. Nothing in this definition limits it solely to the exterior of a building. Therefore, consideration of alterations to the interior of the building cannot be considered arbitrary under the ordinance.

## IV. Conclusion

The requirement that a party appealing the decision of the Metro Council must sufficiently plead facts alleging a particularized injury or aggrievement from the Metro Council's decision is an issue of particular-case jurisdiction. The alleged failure of LHL to comply with that rule was raised for the first time on appeal therefore the issue was waived. Moreover, we clarify that the doctrine of legislative grace requiring compliance with statutory provisions from administrative decisions when seeking review in a court does not affect the subject matter jurisdiction of the reviewing court. Kentuckians have a

constitutional right of appeal from administrative decisions and the judiciary has constitutional authority to review administrative decisions for arbitrariness even in the absence of a statute authorizing an appeal. Thus, allegations that a statute has not been complied with when invoking a court's authority to review an administrative decision for arbitrariness are always questions of particular-case jurisdiction. The Court of Appeals is reversed.

As to the underlying merits, we reverse the Jefferson Circuit Court's conclusion that Metro Council's decision was tainted by blatant favoritism or a conflict of interest. The Omni contract was clearly relevant to the question of whether Liberty Hall should be designated a landmark, and it is not arbitrary for a local government to consider its contracts when reviewing such decisions so long as those contracts do not improperly delegate legislative power; are illegal in and of themselves; or have as their purpose the subversion of local or statutory law. None of those exceptions are applicable here. For the other arguments advanced by LHL to support a conclusion that procedural due process was violated, we conclude Metro Council acted within its authority as defined by the relevant local ordinances. Metro Council's decision to reverse the Landmark Commission's designation of Liberty Hall as a landmark is affirmed.

All sitting. Lambert, C.J.; Bisig and Goodwine, JJ., concur. Keller, J., concurs in part and dissents in part by separate opinion. Nickell, J., concurs in part and dissents in part by separate opinion in which Thompson, J., joins.

KELLER, J., CONCURRING IN PART AND DISSENTING IN PART: While I agree with the Majority that the circuit court retained the authority to hear this

26

matter, I must write separately to express my disagreement with its jurisdictional analysis. Furthermore, I concur with Justice Nickell's conclusion that it is our duty to remand this matter to the Court of Appeals' for consideration of the underlying merits.

The Majority holds that LMCO § 32.263(C)'s requirement that a party allege facts of particularized injury or aggrievement is a statement regarding particular-case jurisdiction. I disagree. Instead, I would hold that LMCO § 32.263(C)'s language, "[a]ny person or entity claiming to be injured or aggrieved," is best understood as a statutory standing requirement.

"'Standing,' of course, in its most basic sense, refers to an integral component of the 'justiciable cause' requirement underlying the trial court's jurisdiction." *Lawson v. Off. of Atty. Gen.*, 415 S.W.3d 59, 67 (Ky. 2013) (citing Ky. Const. § 112; *Rose v. Council for Better Educ.*, 790 S.W.2d 186 (Ky. 1989)). Statutory standing, however, refers to "'whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action.'" *Id.* (quoting *CGM, LLC v. BellSouth Telecomm., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011)). Statutory standing is not a jurisdictional question, but instead is essentially a matter of statutory interpretation. *Id.*

Here, LMCO § 32.263(C), the ordinance at issue, states,

An appeal from the Council shall be taken by *any person or entity claiming to be injured or aggrieved* by the final action of the Council to the Jefferson Circuit Court within 30 days of the Council's final action, which shall be defined as the date on which the Council votes to uphold, amend, or overturn the decision of the Commission on the proposed designation.

27

At issue in this matter is whether LHL sufficiently pled injury or aggrievement such that it was properly before the Jefferson Circuit Court. As this Court made clear in *Lawson*, "[t]he question [for statutory standing] is whether the plaintiff is among the class of persons authorized by the statute to bring suit." 415 S.W.3d at 67. LMCO § 32.263(C)'s inclusion of the language, "any person or entity claiming to be injured or aggrieved," is clearly a statement stipulating what "particular plaintiff[s]" may "avail [themselves] of that right of action." *Lawson*, 415 S.W.3d at 67; *see also Kenton Cnty. Bd. of Adjustment v. Meitzen*, 607 S.W.3d 586 (Ky. 2020) (Wright, J., dissenting).

However, "[s]tatutory standing, unlike constitutional standing, may be waived if not timely pleaded." *Lexington-Fayette Urb. Cnty. Hum. Rts. Comm'n v. Hands On Originals*, 592 S.W.3d 291, 297 (Ky. 2019) (citing *Harrison v. Leach*, 323 S.W.3d 702, 708 (Ky. 2010)). Here, as the Majority aptly recognizes, "at no time in the proceedings before the circuit court did any party raise an issue of statutory standing, particular-case jurisdiction, or subject-matter jurisdiction." Because the circuit court's ability to hear this case was only raised for the first time at the Court of Appeals, the Appellees have waived this issue. Thus, although I disagree that this is an issue of particular-case jurisdiction, I ultimately concur with the Majority's conclusion that the circuit court retained the authority to hear this case. Accordingly, I agree that the Court of Appeals must be reversed.

NICKELL, J., CONCURRING IN PART AND DISSENTING IN PART: While I concur with much of the majority's opinion, including its jurisdictional analysis, I disagree with resolving the underlying merits at this juncture. Because of its resolution of the jurisdictional issue, the Court of Appeals did not reach the merits of the parties' arguments. Because this Court has reversed the Court of Appeals' threshold jurisdictional holding, rather than addressing the merits, the matter should be remanded to the Court of Appeals for consideration of the questions presented. Thus, I concur in part and dissent in part.

Thompson, J., joins.

COUNSEL FOR APPELLANT:

Donald J. Kelly
Thomas E. Travis
Matthew L. Bunnell
Wyatt, Tarrant & Combs, LLP

COUNSEL FOR APPELLEES, LOUISVILLE/JEFFERSON COUNTY METRO
GOVERNMENT; THE LEGISLATIVE BODY OF THE LOUSIVILLE/JEFFERSON
COUNTY METRO GOVERNMENT; HISTORIC LANDMARKS AND
PRESERVATION DISTRICTS COMMISSION:

Michael J. O'Connell
Jefferson County Attorney

Anne P. Scholtz
Carrie P. Hall
Assistant Jefferson County Attorneys

COUNSEL FOR APPELLEE, OMNI LOUISVILLE, LLC:

Scott A. Davidson
Wilson Esler Moskowitz Edelman & Dicker, LLP

COUNSEL FOR AMICI, KENTUCKY RESOURCES COUNCIL, INC. AND
NATIONAL TRUST FOR HISTORIC PRESERVATION:

Ashley Wilmes
Thomas FitzGerald
Kentucky Resources Council, Inc.